UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **LATISHA JOSEY**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**T-MOBILE USA, INC.** d/b/a **METRO BY T-MOBILE**,<br><br>*Defendant*. | Civil Case No.: 23-10697<br><br>**COMPLAINT - CLASS ACTION** |

# INTRODUCTION

1. This action arises out of the marketing practices of Defendant, T-Mobile USA, Inc. d/b/a Metro By T-Mobile ("Defendant" or "Metro") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Metro sends, or has sent on its behalf, telemarketing text messages advertising Metro's promotions, to individuals on the National Do-Not-Call Registry.

3. Metro continues to send its telemarketing text messages even after it receives multiple requests from the called party requesting that Metro stop.

4. Accordingly, Plaintiff brings this action on behalf of herself and classes of similarly situated individuals.

1

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over Metro because Metro conducts business transactions in this District, has committed tortious acts in this District and has directed its telemarketing activity to residents located in this District.

7. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

8. Plaintiff Latisha Josey ("Ms. Josey") is, and at all times mentioned herein was, a citizen and resident of Detroit, Michigan.

9. Ms. Josey is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant T-Mobile USA, Inc. d/b/a Metro by T-Mobile ("Metro"), is and at all times mentioned herein was, a Delaware corporation headquartered at 12920 SE 38th Street, Bellevue, Washington 98006.

11. Metro may be served via its registered agent CSC-Lawyers Incorporating Service located at 2900 West Road, Suite 500, Eash Lansing, Michigan, 48823.

12. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

14. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

15. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

16. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

17. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500

3

to $1,500 per call through § 227(c) of the TCPA.

18.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

19.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

21.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

22.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and

enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

23. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

24. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

25. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

26. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

27. There is a private right of action to enforce 47 C.F.R. § 64.1200(d)

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

28. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

29. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

30. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on

whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

31.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

119.    Finally, text messages, such as the ones sent by Metro, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

32.     Ms. Josey is the user of a cellular telephone number ending in 4282.

33.     Ms. Josey's cellular telephone number ending in 4282 is used for

residential purposes and is not associated with a business.

34. On or about October 12, 2021, Metro began sending Ms. Josey unwanted text messages from short code 2962.

35. These text messages advertised Metro's products and services.

36. Ms. Josey has contacted Metro numerous times and requested that Metro cease texting her.

37. For example, on December 9, 2021, Ms. Josey received that following text message from Metro and immediately replied "STOP":



38. Ms. Josey immediately received a response message that stated, "You will no longer receive Metro By T-Mobile promotions via text message," as shown below:



39. However, as shown above, she was sent another promotions text message just 15 minutes later.

40. Metro continued to text Ms. Josey after the "10 day buffer period" described in its response to her stop request as shown below:



9

41. Despite Ms. Josey's multiple stop requests, she continues to receive text messages from Metro.

42. In an attempt to stop the text messages, on December 17, 2022, Ms. Josey registered her telephone number on the National Do-Not Call Registry.

43. Despite her registration, and her requests that the messages stop, Ms. Josey has continued to receive text messages from Metro, in January, February and March of 2023.

44. Discovery of Metro's internal records will reveal the total number of text messages Metro sent to Ms. Josey.

45. Ms. Josey did not provide prior express invitation or permission or consent for these text messages. To the contrary, in response to many of these text messages, Ms. Josey requested that Metro cease texting her.

46. Metro or those otherwise sending text messages on Metro's behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below.

47. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued text messages to Ms. Josey after she directly asked not to be contacted.

48. Metro's violations were negligent.

49. Alternatively, they were willful and knowing.

50. Ms. Josey and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Metro's text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The text messages were annoying and a nuisance, and wasted the time of Ms. Josey and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

51. Metro uses automated systems to send outbound telephonic sales calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

52. Metro sent two or more telephone solicitations to Ms. Josey, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

53. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Josey is entitled to $500 per call through 47 U.S.C. § 227(c).

54. Ms. Josey is entitled to an additional $1,500 per call if Metro's actions are found to be knowing or willful.

11

55. Metro placed two or more telemarketing calls to Ms. Josey, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

56. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Josey is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

57. Ms. Josey is entitled to an additional $1,500 per call if Metro's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes" as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendant Metro placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls, from four years prior to the filing date of the Complaint through class certification.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendant Metro placed (or had placed on its behalf) two or more telemarketing calls or messages in a 12-month period, including at least one after the person requested that the calls or messages stop, from four years prior to the filing date of the Complaint through class certification..

("Policy Class")

12

(The Registry Class and the Policy Class are collectively referred to as the "Classes.")

59. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

60. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

61. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

   a. The time period(s) during which Defendant sent its text messages;
   b. The telephone numbers to which Defendant sent its text messages;
   c. The telephone numbers for which Defendant had prior express written consent;
   d. The purposes of such text messages; and
   e. The names and addresses of Class members.

62. The Classes are comprised of hundreds, if not thousands, of individuals.

63. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

 a. Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

 b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

 c. Whether Defendant or the entity with which it contracts sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

 d. Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

 e. Whether Defendant's statutory violations were willful and knowing; and

 f. Whether Defendant should be enjoined from engaging in such conduct in the future.

64. Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

65. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

66. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

67. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

68. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

69. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

70. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

72. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Registry Class)

73. Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-72 as if fully set forth herein.

74. Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

75. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

76. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

77. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

78. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Policy Class)

79. Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-72 as if fully set forth herein.

80. Defendant sent numerous text messages for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

81. Defendant did so despite not having a written policy pertaining to "do not call" requests.

82. Defendant did so despite not having such a policy available "upon demand."

83. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

84. Defendant did so despite not recording or honoring "do not call" requests.

85. Defendant sent two or more telemarketing text messages to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

86. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

87.     Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages;

E.     An award of treble damages; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** March 24, 2023         s/ *Max S. Morgan*
Max S. Morgan, Esquire
Eric H. Weitz, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

(*application for admission *pro hac* vice forthcoming)